UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Lana Woodcock**

    **v.**                                                            **Case No.  CV-03-168-PB**

**Bristol-Myers Squibb Company**

**MEMORANDUM AND ORDER**

Lana Woodcock brings this action against her former employer, Bristol-Myers Squibb Company ("Bristol-Myers") claiming that she was "wrongfully discharged" in violation of New Hampshire law.  Bristol-Myers moves for summary judgment (Doc. No. 20), arguing that Woodcock's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a).  For the following reasons, I grant the motion for summary judgment.

**I.  BACKGROUND**

Lana Woodcock was a Bristol-Myers employee from September 1997 until January 2000, when she was "voluntarily terminated"

for failing to return to work following a leave of absence for a short-term disability.  While employed at Bristol-Myers, Woodcock was responsible for overseeing the company's hospital-related sales efforts in New England, which required her to spend much of her time traveling by automobile to institutions throughout the region.

On May 3, 1999, Woodcock was injured in a work-related automobile accident.  Unable to perform many of the functions of her job, Woodcock immediately filed for short-term disability ("STD") benefits.  STD benefits are available to Bristol-Myers employees through the **BRISTOL-MYERS SQUIBB COMPANY SHORT TERM DISABILITY PLAN**" (hereafter referred to as "the Plan").  Whether an employee qualifies for these benefits is determined by a third-party "Claims Administrator."  In this case, the Claims Administrator was CORE, Inc.

Upon receipt of information regarding Woodcock's condition, CORE immediately concluded that her injuries prevented her from performing the essential functions of her job.  Thus, it granted her full STD benefits from May 3, 1999 to June 6, 1999, and Temporary Alternative Work Duty benefits from June 6, 1999 to

October 13, 1999.[1]  In an October 25, 1999 letter, however, CORE determined that Woodcock was no longer eligible for protection under the Plan because her physicians had failed to respond to a number of CORE's inquiries.  Woodcock disagreed with this conclusion and immediately exercised her right to appeal.

In November 1999, while her appeal was pending, Woodcock, who had become pregnant in May 1999, began to experience cramping.  Doctors interpreted these symptoms as the early warning signs of a premature birth and ordered that she be placed on bed rest.  Nonetheless, on December 9, 1999 and January 5, 2000, Bristol-Myers insisted that she return to work, threatening to terminate her if she did not.

Woodcock responded in three ways.  First, she informed her supervisor, Anthony McBride, that she was six months pregnant and that she could not return to work.  Second, on January 6, 2000, she forwarded a letter from her physician to CORE, requesting that CORE begin to process a new claim for disability benefits based on her pregnancy.  Third, she attempted to return to work

---

[1]  Under the Plan, "the Claims Administrator may approve an Employee's return to work on a full-time or part-time basis performing the responsibilities of a Temporary Alternative Work Duty assignment."

-3-

in a full-time capacity.

These efforts ultimately proved unsuccessful, and on January 26, 2000, Bristol-Myers terminated Woodcock as a company employee effective immediately.  Bristol-Myers later changed the date of termination to January 5, 2000 without explanation.

Three months later, on March 20, 2000, CORE notified Woodcock that both her STD benefits appeal and her independent pregnancy-based claim for STD benefits had been denied.  As to Woodcock's pregnancy-based claim, CORE explained that it had been denied because it was filed on January 6, 2000 and thus post-dated the effective date of her termination.

Woodcock initiated her "wrongful termination" claim against Bristol-Myers in Rockingham County Superior Court on January 3, 2003.  She argued that the manner in which she was terminated violated: (1) the public policy in favor protecting an unborn life; (2) the public policy in favor of protecting injured workers from further injury; (3) the public policy in favor of

the good faith administration of company-provided benefits; (4)
the public policy in favor of protecting the jobs of workers
suffering from on-the-job injuries; and (5) the public policy
against permitting retaliation against employees for reporting
wrongful conduct.

Bristol-Myers successfully removed the case to federal
court.[2]  Woodcock then filed a motion to remand (Doc. No. 9)
which this court denied in a June 17, 2003 order (Doc. No. 10).

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  A trial is necessary only if there is a genuine factual
issue "that properly can be resolved only by a finder of fact

---

[2]  The basis for removal was that cases involving ERISA
preemption are "'necessarily federal in character by virtue of
the clearly manifested intent of congress,'" and therefore that
this case "'arises under . . . the laws . . . of the United
States'" for jurisdictional purposes.  <u>Fitzgerald v. Codex Corp.</u>,
882 F.3d 586, 588 (1st Cir. 1989) (citation omitted).

because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248.

In ruling on a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).  The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the burden shifts to the non-moving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citation omitted).  Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat

summary judgment.  See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

### III.  DISCUSSION

Bristol-Myers argues that Woodcock's state law claim for "wrongful termination" is preempted by § 1144(a) of ERISA. Section 1144(a) provides for the "preemption of all state law causes of action 'insofar as they may now or hereafter relate to any employee benefit plan.'" McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998) (quoting 27 U.S.C. § 1144(a)).  This provision is "conspicuous for its breadth" and has been interpreted by the United States Supreme Court to preempt state law claims even if a claim's effect on ERISA is "indirect." Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 49 (1st Cir. 2000) (citing, inter alia, District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 (1992)).

ERISA preemption analysis involves "two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan."  McMahon, 162 F.3d at 36 (citing Rosario-Cordero

-7-

v. Crowley Towing and Transp. Co., 46 F.3d 120, 124 (1st Cir.
1995).  Both parties agree that this case involves an ERISA
employee benefit plan.  The question, then, is whether Woodcock's
cause of action for "wrongful termination" "relates" to Bristol-
Myers' employee benefit plan for preemption analysis purposes.

According to the First Circuit, a cause of action "'relates
to a covered employee benefit plan . . . if it [1] has a
connection with or [2] a reference to such a plan.'"  Carpenters
Local Union No. 26 v. U.S. Fidelity & Guar. Co., 215 F.3d 136,
140 (1st Cir. 2000) (citing Cal. Div. of Labor Standards
Enforcement v. Dillingham Constr., 519 U.S. 316, 324 (1997)).

Woodcock claims that because the basis of her suit was
Bristol-Myers' decision to "terminate" her, her cause of action
neither connects with, nor refers to, an ERISA plan.  I disagree.
In its January 26, 2000 letter, Bristol-Myers explicitly stated
that its decision to "terminate" Woodcock depended directly on
CORE's finding that Woodcock was no longer entitled to STD
benefits.  There can be no question, then, that, despite
Woodcock's characterization of the claim, at the heart of this
dispute are facts that are both "connected with" and "refer to"

an ERISA plan.  See McMahon, 162 F.3d at 38-39 (concluding that the re-characterization of state law claims did not save the suit from preemption because, at the core of the suit, was an ERISA plan); see also Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 61-62 (1987) (wrongful termination claim preempted by ERISA where termination resulted from employee's refusal to return to work after disability benefits were terminated). Woodcock's "wrongful termination" cause of action is therefore preempted.

### IV.   CONCLUSION

Bristol-Myers' motion for summary judgment is granted (Doc. No. 20).  Woodcock shall have 30 days to file an amended complaint stating a claim under ERISA.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

June 27, 2005

cc:  James Kazan, Esq.
     Mark Swirbalus, Esq.

-9-